| | |
|---|---|
| Judge Collini: | The first thing I want to address is it has been brought to my attention that there may be recording devices in the courtroom by people in the audience. Is that correct? |
| Robert Fileccia: | No, your Honor. |
| Judge Collini: | If I find that to be the case that will be a violation. ... That's number one. |
| | Number two, it's also been brought to my attention that there has been notes or stenographic notes being taken of the proceedings by people in the audience. If that's correct, I just wanted to question [standby] counsel as to whether or not that's accurate. |
| Standby: | I haven't got the slightest idea, judge. |
| Judge Collini: | Ask your client.    [Tr. 2/1/07 at 17, 18.] |

***

| | |
|---|---|
| Judge Collini: | I assume there may be speakers in the [laptop computer], but we are not going to set up speakers because I don't know if there's a recording device in that machine. If there is, I'm going to have it confiscated and I guarantee you that you will not see that machine again ... if it's brought to my attention that there's any kind of recording device in there ... you'll pay the consequences. |
| | And I want you to understand that that sort of behavior, and this is the second time **I'm warning you** about that or maybe the third time, will be considered by this Court to be grounds for some form of **contempt proceeding**. So you should be thoroughly **warned**. |
| Gary Becker: | Is there any reason to believe that that warning you just gave is necessary. |
| Judge Collini: | Yes, there is. |
| Gary Becker: | I'm not aware of it. |
| Judge Collini: | Counsel, I am. |
| Gary Becker: | Could you share it with me? I do represent him and this is a public proceeding and I think I'm entitled to know what evidence your Honor is relying on. |
| Judge Collini: | No. |
| | In any event, **you've been warned**. [Tr. 2/7/07 at 78, 79.] |

468.    Judge Collini was trying to eliminate ear witnesses before he corruptly staged the

dismissal of the indictment. He knew that it is <u>not</u> unlawful for a court reporter or anyone

else to take notes or stenographical minutes from the audience in a public courtroom.

469.    On pages 262-264 of the February 7, 2007 minutes, Judge Collini made his final performance in the staged ending with a *sua sponte* re-inspection of the grand jury minutes, the results of which he purportedly compared to ADA Varriale's fraudulent bill of particulars that I was never given.

470.    Although Judges Collini, Rienzi, and Rooney lambasted the Plaintiff for repeatedly requesting a bill of particulars (to reveal the nature and cause of the accusation against me), ADA Varriale sandbagged the Court when she admitted **switching** the Plaintiff's tax liability number with that of my then co-defendant Richard Fileccia's numbers.

| | |
|---|---|
| ADA Varriale: | Ultimately what happened is I interchanged Robert and Richard's numbers. ... This is a mistake on my part, I must admit. |
| Judge Collini: | Basically, what you are telling me is that the bill of particulars does not reflect the number you expect to prove at trial. [Tr. 2/7/07 at 243.] |

471.    Being completely surrounded by the prosecutors' criminal activity and overwhelming evidence of a fabricated indictment, Judge Collini *sua sponte* dismissed the Plaintiff's charges:

| | |
|---|---|
| Judge Collini: | Upon reflection, **without either party making an application,** I have before me a motion to reinspect the Grand Jury minutes. At this point I'm ready to move on that – to decide on that ... At this point then, I've had the opportunity to review the charge and review the presentation with respect to the Grand Jury minutes. The Court feels based upon the facts and the law, as the case was presented in the Grand Jury presentation, **this Court has no other course but to dismiss the indictment,** that count of this indictment that we are currently engaged in. And that's the ruling of the Court. [Tr. 2/7/07 at 262] |

472.    Notwithstanding the *sua sponte* dismissal, the true reason Judge Collini dismissed the Tax Indictment is because it was bleeding profusely and evidence of the prosecutor's

criminal activity and fabrication of the evidence in the investigatory stage of the proceeding was uncontrollably pouring out onto the record.

473. The dismissal of the indictment was in favor of the accused.

474. The Plaintiff's Certificate of Disposition certified by the Richmond County Supreme Court states, "THE ABOVE MENTIONED DISMISSAL IS A TERMINATION OF THE CRIMINAL ACTION IN FAVOR OF THE ACCUSED."

475. However, Judge Collini was concerned about the Plaintiff's pending law suit against him in the Appellate Division Second Department that charged him with the equivalent of civil rights offenses pursuant to 18 USCA §241 Conspiracy Against Civil Rights, and 18 USCA §242 Deprivation of Rights Under Color of Law.  See Fileccia v. Donovan, Collini, et al., Docket No. 2007-1061, 2nd Dept.

476. In response, Judge Collini made one last veiled threat against the plaintiff.  He told prosecutors they can re-present their fraudulent tax case to a new grand jury, provided they *first* obtain his permission.

| | |
|---|---|
| Judge Collini: | Now, obviously, I'm not precluding a re-presentation in this matter.  However, any re-presentation of this case has to be presented before this Court and the basis of the representation would have to be approved by this Court.  And of course, any limitations with respect to statute [of limitations] would apply clearly. |
| | And there would not be − there is no admissible re-presentation, I don't know if I was just clear, without specific leave of this Court. |
| ADA Varriale: | Yes, Judge. |
| Judge Collini: | And obviously, that's the way we stand. |
| | This indictment stands dismissed. [Tr. 2/7/07 at 264.] |

477. Judge Collini wanted the Plaintiff to know that if I testified against him in the Appellate Division, he would have me re-indicted.

478. Within an hour of the indictment being dismissed, defense lawyer Gary G. Becker called the Plaintiff and asked me to immediately withdraw my lawsuit against Judge Collini by sending a letter to the Appellate Division with copy to Collini's chambers. Becker asked to see the letter before I sent it to the Appellate Division even though he did not represent me in that proceeding. His requests became increasingly strident the next two days (February 8 and 9, 2007), when he learned I did not withdraw the complaint. Becker asked me three times in three days to withdraw J. Collini's law suit because he was deathly concerned about the Court's veiled threats. I did not withdraw the charges.

479. DA Donovan had nine (9) weeks to re-present the fraudulent tax charges to a grand jury before the statute of limitations expired (April 15, 2007). He never did.

480. DA Donovan and his office voluntarily ABANDONED the prosecution knowing that the accusations against the Plaintiff were false and that the evidence was fabricated during the investigatory stage of the proceedings. Prosecutors' failure to proceed indicated a total lack of reasonable grounds for the prosecution.

481. On February 12, 2007, the Richmond County Supreme Court Ordered DA Donovan to Seal all of the Plaintiff's arrest records and prosecution files pursuant to CPL 160.50, which is prima facie evidence of a final termination in favor of the accused.

482. The Plaintiff did not negotiate or compromise with prosecutors and repeatedly demanded a trial.

483. The Plaintiff maintained my innocence throughout the proceedings and refused all plea bargains whether bribed by prosecutors or by the Court.

484. In a decision rendered by Judge Rienzi on October 6, 2005, the Court admitted that the Plaintiff "refused to even consider" his suggestion of an adjournment in contemplation of

dismissal of the District Attorney's 309 Count Enterprise Corruption Indictment (62/2002) and Tax Indictment(23/2004):

> "However, in the spring of 2005, it became apparent that the indictments would not be resolved absent further litigation, as defendants **refused to even consider** the court's suggestion of an Adjournment in Contemplation of Dismissal (ACD) with some restitution in the car case, and misdemeanor pleas and non jail sentences in the tax case."

485.  The glaring fact that the Plaintiff refused the Court's suggestion of an ACD in exchange for the dismissal of 313 combined criminal counts is incontrovertible evidence of the Plaintiff's innocence.

486.  On January 31, 2007 during trial, Judge Collini threatened and bribed the Plaintiff to plead guilty. After an hour of the Court's incentives, I reminded him that I was innocent of the charges and that the United States Constitution precluded him from accepting a guilty plea. I did not negotiate with Judge Collini. I listened as he created an indelible record of serious judicial misconduct against himself that ended when ADA Varriale offered the following consolidated plea bargain to end both indictments pending against me:

| | |
|---|---|
| ADA Varriale: | "Consolidate the indictments and have him take one misdemeanor to cover both indictments." [Tr. 1/31/07 at 52] … |
| Judge Collini: | The only possibility would be a misdemeanor with a conditional discharge. You are talking about an A misdemeanor or a B? |
| ADA Varriale: | An A or B. |
| Judge Collini: | Mr. Shulman (standby counsel), why don't you talk to the defendant about this for a few minutes? |
| **Robert Fileccia:** | **It is not necessary. … We will go to trial.** |
| Judge Collini: | I want the record to say there were these discussions, what your liability was, what the potential situation was and you decided not to do it. |
| **Robert Fileccia:** | I think the Court said graciously was the fact … that in light of where I am sitting without counsel, I had to consider it and you |

said you would not ... **you would have me say that I committed a crime and I think that is the primary issue, and I did not, so we have to go to trial.**

Judge Collini:    That is the situation. If you are not guilty, we are going to trial. Then I don't think there is any further discussion. (Tr. 1/31/07 at 55, 56).

487.    The Plaintiff refused ADA Varriale's plea offer, proclaimed my innocence and demanded a trial.

488.    The dismissal of the indictment was <u>not</u> inconsistent with the Plaintiff's innocence.

489.    The foregoing serious judicial and prosecutorial misconduct was motivated by the Court's bad faith and was undertaken to prejudice the Plaintiff. As a result, double jeopardy attached, a retrial is forbidden, and the dismissal of the indictment was a <u>final</u> termination in favor of the accused.

490.    Throughout Judge Collini's dismissal of the indictment, ADA Varriale and ADA Bousquet approved and ratified the Court's misconduct in violation of the Plaintiff's constitutional right of access to the courts.

491.    In light of the fundamental distortion of the judicial process involved in this case, the Plaintiff is entitled to relief under 42 USC §1983.

492.    I respectfully incorporate by reference the entire trial and pretrial minutes of The Tax Indictment, No. 23/2004.

493.    By any objective standard, the record evidence indicates that there is no other plausible explanation for what happened in the Plaintiff's trial other than a criminal conspiracy between prosecutors and the Judiciary to find and stop leaks of the ADAs criminal activity and to convict the Plaintiff by the use of any means necessary.

494.    The Judiciary in this case was not fair and impartial, but instead were "plumbers" operating out of the basement of the Richmond County Supreme Court.

## 24. PROSECUTORS' TARGET CRIMINAL DEFENSE LAWYERS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHT TO COUNSEL, ACCESS TO THE COURTS, AND RIGHT NOT TO BE MALICIOUSLY PROSECUTED

### A. Benjamin Brafman, Esq. and Mark M. Baker, Esq.

495.    The Plaintiff and my brother Richard Fileccia hired Brafman and Baker on or about January 6, 2005. The parties agreed that Brafman and Baker would represent Richard Fileccia in both the Tax and Car Indictments, and prepare motions for <u>both</u> Richard and Robert Fileccia in both of the pending indictments.

496.    Defendants Brafman and Baker held themselves out to be tax lawyers.

497.    Defendants Brafman and Baker requested and received a one hundred and fifty thousand dollar ($150,000) retainer.

498.    Defendant Brafman said the $150,000 retainer included "everything" for both the Plaintiff and his brother up to the day of trial.

499.    Defendants Brafman and Baker understood and agreed that there would be no plea bargains because the Plaintiff and my brother were innocent of all charges. The "no plea" terms of our agreement was an indispensible and inviolate part of the Plaintiff's contract with Brafman and Baker.

500.    Defendants Brafman and Baker were warned orally and in writing that prosecutors would attempt to surreptitiously conflict out their law firm, and thereby disqualifying them as fact witnesses pursuant to the witness advocate rule.

501.    Investigations reveal that two weeks after being retained, on January 17, 2005, ADA Frey called Brafman's law firm and spoke to his associate Raena Selip, Esq. ADA Frey asked Raena Selip for the Plaintiff's home address—even though he knew precisely where I

lived—and surreptitiously tried to re-direct the Plaintiff's stolen mail to their office. Raena Selip informed Baker of these facts.

502.   Brafman and Baker knowingly and intentionally failed to inform the Plaintiff, the Court, or law enforcement agencies about ADA Frey's conversation with Raena Selip, Esq., and or the growing evidence of ADA's mail theft ring in violation of their contractual, ethical and fiduciary responsibilities to the Plaintiff.

503.   On June 2, 2005, Brafman and Baker met with prosecutors in a closed door meeting.

504.   On June 9, 2005, Brafman and Baker demanded that the Plaintiff (and my brother) plead guilty to crimes they knew we did not commit in violation of their contractual, ethical and fiduciary responsibilities to the Plaintiff and my brother.

505.   On June 11, 2005, the Plaintiff's brother Richard Fileccia sent Baker a certified letter requesting Raena Selip's sworn affidavit to memorialize ADA Frey's criminal activity. Defendants Brafman and Baker failed to reply.

506.   On June 21, 2005, the Plaintiff's brother Richard Fileccia sent Brafman and Baker a certified letter that enclosed a NYS Department of Taxation and Finance collection notice that pertained to mail that was stolen by ADA Frey's operatives inside the United States Postal Service.  Defendants Brafman and Baker failed to reply.

507.   On June 22, 2005, Defendant Baker offered Richard Fileccia a "chunk of money back" from his retainer if Richard would plead guilty to a crime.

508.   On July 7, 2005, Baker informed the Plaintiff that he and Brafman were not tax lawyers and were "uncomfortable" answering the Tax Department's collection notice that Richard Fileccia sent them on June 21, 2005.

509.   Investigations reveals that Brafman and Baker's "uncomfortable" tax collection notice

relates to Count 5 of the Tax Indictment that was fabricated by ADA Frey's mail theft ring who intercepted, stole and destroyed the preceding eight (8) tax notices that were sent to the Plaintiff's residence *before* the collection notice. The eight tax notices were stolen *before* presentation to a grand jury in the Tax Indictment. Brafman and Baker's "uncomfortable" tax <u>collection</u> notice was delivered years *after* indictment.

510. Based upon the foregoing, Defendants Brafman and Baker asked for and accepted a one hundred fifty thousand dollar ($150,000) retainer from the Plaintiff under false and fraudulent pretenses.

511. On July 14, 2005, in a recorded conversation, the Plaintiff's brother Richard Fileccia told Baker that the Plaintiff was going to initiate a federal mail fraud investigation against ADA Frey. Within hours of this conversation, the United States Postal Service issued a "Notice of Removal" dated July 14, 2005 against Letter Carrier Gabriel Cruz that falsely accused the innocent mailman of "Delaying First Class Mail" on his Castleton Avenue route where the Plaintiff's former office building was located. ADA Frey and his operatives were targeting Gabriel Cruz for the crimes they committed.

512. Immediately thereafter, Defendants Brafman and Baker "laid down". They deliberately failed and refused to file critical motions in defense of the Plaintiff and his brother in violation of their contractual, ethical and fiduciary responsibilities, including:

    a) Failed to prepare or file a 2-page warrantless search and seizure motion that would have ended the Tax Indictment;

    b) Failed and <u>refused</u> to file a motion for court-ordered discovery;

    c) Failed to notify the Court of ADA Frey's then suspected mail theft operation;

    d) Failed to move for specific Brady material;

e) Failed to prepare substantive motions, including those attacking the integrity of the Indictments based upon the prosecutor's fabrication of evidence during the investigatory stage of the proceedings.

513.  The Plaintiff respectfully incorporates by reference the *pro se* Plaintiffs' September 12, 2005 motion to Judge Rienzi in Indictment 23/2004 requesting, among other things, an order "compelling defense attorneys Benjamin Brafman and Mark Baker to release moneys they are wrongfully withholding in violation of their contractual and professional obligations, specifically a $150,000 retainer previously tendered by Robert and Richard Fileccia, pursuant to this Court's inherent and statutory power to regulate the practice of law."

514.  Defendants Brafman and Baker failed and refused to refund any of their unearned $150,000 retainer that they asked for and accepted under false and fraudulent pretenses.

515.  Based upon the foregoing and other evidence, Defendants Brafman and Baker conspired and acted in concert with ADA Frey, ADA Varriale, and ADA Mattei to maintain the Plaintiff's malicious prosecution in violation of my Fourth Amendment constitutional right not to be maliciously prosecuted, Sixth Amendment right to effective assistance of counsel, Sixth Amendment right to a fair trial; and constitutional right of access to the courts.

516.  Defendant ADA Frey knowingly and intentionally targeted Brafman and Baker to disqualify their law firm in violation of the Plaintiff's Fourth Amendment constitutional right not to be maliciously prosecuted, Sixth Amendment right to effective assistance of counsel, Sixth Amendment right to a fair trial; and constitutional right of access to the courts.

517.　Defendants Brafman and Baker, and their law firm(s) were grossly negligent for failing to take the necessary precautions to prevent ADA Frey from interfering with their contractual and fiduciary relationship with the Plaintiff.

518.　Defendants Brafman and Baker knowingly and intentionally breached their contract with the Plaintiff.

519.　Defendants Brafman and Baker knowingly and intentionally breached their fiduciary duty to the Plaintiff.

520.　Defendants Brafman and Baker knowingly and intentionally breached their ethical responsibilities to the Plaintiff.

521.　Based upon information and belief, Defendants Brafman and Baker breached the plaintiff's attorney client privilege.

522.　The Plaintiff hereby repeats the foregoing Brafman and Baker allegations against Brafman & Ross, P.C. and Brafman and Associates, P.C.

### B. Alex Shulman, Esq., Stand-by Counsel.

523.　On November 25, 2005, Judge Leonard Rienzi assigned Alex Shulman, Esq. as the Plaintiff's *standby* counsel after having certified me to be indigent.

524.　The record evidence indicates that Judge Rienzi handpicked Shulman to:

  a) surreptitiously undermine the Plaintiff's defense;

  b) maintain the Plaintiff's malicious continuing seizure;

  c) strip Plaintiff of my constitutional right to effective assistance of counsel; and

  d) conducting counterintelligence activities for prosecutors.

525.　Almost immediately, Defendant Shulman confessed to the Plaintiff that he is <u>not</u> a tax lawyer; did not have any tax experience; did not file his own tax returns; did not have a

fax machine; did not have access to the internet; did not have a computer; did not perform computerized legal research; and did not want to represent the Plaintiff in any capacity.

526.   Defendant Shulman also admitted that he was personal friends with ADA Mario Mattei and his office, "hung around" with them, and was "surprised" that Judge Rienzi assigned him. Shulman warned the Plaintiff that if I subpoenaed any of the ADAs to testify, he "would sit there like a potted plant."

527.   However, notwithstanding Shulman's irreconcilable conflict of interest, inability, and unwillingness to help the Plaintiff, he waited six months to make a motion to be relieved as counsel in order to give prosecutors an opportunity and advantage to maliciously prosecute me.

528.   On June 13, 2006, Shulman filed a materially false and misleading attorney affirmation dated June 12, 2006 in the Richmond County Supreme Court to be relieved as counsel.

529.   Defendant Shulman compiled twenty two (22) pages of false and misleading averments designed to maliciously discredit the Plaintiff, protect the prosecutors, and undermine my defense.

530.   For example, Shulman characterized the Plaintiff's meritorious defense as "repugnant" suggesting that it was fraudulent or otherwise unlawful.

531.   When the Plaintiff confronted Shulman and informed him that all of our conversations were recorded, Shulman panicked and physically removed his sloppy hand-written motion from the Supreme Court Clerk's Office, which is a crime. A lawyer may *withdraw* a motion, not remove it from the Supreme Court building.

532.   Shulman prepared a second materially false and misleading affirmation on July 11, 2006.

533.   Shulman prepared a third materially false and misleading affirmation on August 22,

132

2006.

534. On November 14, 2006, Shulman made a fourth attempt to undermine my defense and discredit me. This time, Shulman made materially false and misleading statements on the record in open court, claiming the Plaintiff did not want to try the tax indictment "on its merits", which implied that the fabricated tax case had merit and that my defense was somehow unlawful. [Tr. 11/14/06 at 15, 16.]

535. The Plaintiff responded by asking Judge Rooney to place Shulman under oath and Order him to repeat his false accusations. Shulman immediately withdrew his fraudulent claims, and begged the Court to have them "stricken from the record." See Tr. 11/14/06 at 17, 18.

536. The Court denied Shulman's motion to be relieved as counsel, notwithstanding his irreconcilable conflicts of interest and unmistakable intent to help prosecutors maliciously prosecute the Plaintiff for a crime he knew I did not commit.

537. Judge Rooney sent the Plaintiff to trial with a DA operative masquerading as *standby* counsel.

538. On several occasions thereafter, the Plaintiff called Shulman at his office. However, during the recorded conversations, Shulman disguised his voice and claimed to be a receptionist named "Tom" to avoid my calls.

539. Defendant Shulman conspired and acted in concert with ADA Mattei and other prosecutors to maintain the Plaintiff's malicious prosecution in violation of the Plaintiff's clearly established Fourth Amendment constitutional right against unwarranted searches and seizures and constitutional right not to be maliciously prosecuted.

540. Defendant Shulman conspired and acted in concert with ADA Mattei and other

prosecutors to deny the Plaintiff effective assistance of counsel in violation of my Sixth Amendment constitutional right to counsel and a fair trial.

541. Defendant Shulman knowingly and intentionally breached his contract with the Plaintiff.

542. Defendant Shulman knowingly and intentionally breached his fiduciary duty to the Plaintiff.

543. Defendant Shulman knowingly and intentionally breached his ethical responsibilities to the Plaintiff.

544. Based upon information and belief, Defendant Shulman breached the plaintiff's attorney client privilege.

C. Gary G. Becker, Esq.

545. On February 7, 2007, Judge Robert Collini—after having dismissed the Plaintiff's indictment—suspiciously asked Gary Becker whether he had any pending motions:

| | |
|---|---|
| Judge Collini: | And obviously, that's the way we stand. |
| | **This indictment stands dismissed.** [Tr. 2/7/07 at 264.] |
| Gary Becker: | Thank you, Judge. |
| Judge Collini: | Counsel, with respect to the trial, do you have an application? |
| Gary Becker: | I'm sorry, I can't hear you. |
| Judge Collini: | With respect to the trial, do you have an application? |
| Gary Becker: | Mistrial, your Honor. |
| Judge Collini: | So granted. |

546. The Court unlawfully targeted Gary Becker and baited him to ask for a mistrial attempting to undermine the instant civil rights Complaint in violation of the Plaintiff's constitutional right of access to the Courts.

547. Judge Collini tried to pervert the record to give the reader the false impression that the indictment was dismissed because of a "mistrial," which was impossible because the

134

indictment had already been dismissed.

548.  The truth is the Court dismissed the Tax Indictment because it was bleeding profusely and evidence of the prosecutors' criminal activity and fabrication of evidence was uncontrollably pouring out onto the record. ADA Frey stole the Plaintiff's mail to frame me. ADA Varriale is an accessory after the fact. The Prosecutors bribed and recruited complaining witnesses to testify falsely under oath in the grand jury and trial to maliciously prosecute me. And Judge Collini made overt acts and omissions throughout the trial to conceal all of it.

549.  To reinforce the foregoing serious judicial misconduct, moments after the Tax Indictment was dismissed; Judge Collini again targeted Gary Becker and lured him into a closed door meeting in chambers to discuss ADA Frey's criminal activity and mail theft operation.

550.  The following occurred:

| | |
|---|---|
| **Judge Collini:** | **I want to know one thing with respect to Mr. Frey. There was a representation about mail dealing with Mr. Frey. If that's going to create a situation where there's a conflict for him, I want someone else in your office prepared to go forward.** |
| ADA Varriale: | Ok, Judge. |
| Judge Collini: | I assume there will be representations. I assume there will be applications [to disqualify ADA Frey and make him a fact witness]. I don't know what they are ... Whether or not that has a bearing on other things, I'm not saying it does or it doesn't. I'm not ruling in any way. ... |
| | Now, that brings up another issue and maybe we should get there now. You said to me that there was something you might have wanted me to view in camera. I'm ready to do that now. |
| Gary Becker: | Very good. |
| Judge Collin: | Let's take the reporter. Let's go. |
| Gary Becker: | May I approach ex-parte being it's in camera? |

135

| | |
|---|---|
| **Judge Collini:** | **Maybe we can go in the back.** [Tr. 2/7/07 at 271, 272.] |
| Gary Becker: | Fine. |
| Judge Collini: | On the conference that occurred ex-parte [in Chambers], I listened to the defense presentation. At this time, although I don't know if there was even an application that Mr. Frey discontinue his representation with respect to the People in this case, the Court has found that it would be appropriate for Mr. Frey to continue in his representation. |
| **ADA Varriale:** | **He can?** |
| Judge Collini: | He can. Obviously that will be the decision of your office as to whether you think it's appropriate, but the Court has no objection to Mr. Frey going forward. |
| ADA Varriale: | Okay. |
| Judge Collini: | Is there anything else, Mr. Becker? |
| Gary Becker: | I don't think so, your Honor. |

551.  Expecting defense motions to disqualify ADA Frey in the approaching Car case trial, Judge Collini made a pre-emptive strike against the Plaintiff to maintain my malicious prosecution and once again *sua sponte* ruled that ADA Frey can stay in the case.

552.  Incredibly, ADA Varriale was even shocked and yelled, "HE CAN?"

553.  On March 16, 2007, Gary Becker sent Judge Collini a letter requesting the minutes of their closed door meeting. The Court did not reply.

554.  On March 17, 2007, the Plaintiff sent Judge Collini a certified letter requesting the minutes of his close door meeting with Gary Becker. The Court did not reply.

555.  The Plaintiff ordered a copy of the closed door minutes from the Court Reporters, who informed me that Judge Collini Ordered the closed door minutes to be sealed forever.

556.  All of the Plaintiff's attempts to obtain a copy of the closed door minutes have been unsuccessful.

557.  ADA Varriale and ADA Bousquet acquiesced, approved and ratified the foregoing serious judicial misconduct in violation of the Plaintiff's constitutional right of access to

the Courts and Fourth Amendment right not to be maliciously prosecuted.

558.   Gary Becker was grossly negligent in allowing Judge Collini to bait, lure, deceive or trick him _after_ the Plaintiff's indictment was dismissed. He also breached his contractual, ethical and fiduciary obligations to the Plaintiff.

## FIRST CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does in their individual capacities)

559.   Plaintiff incorporates paragraphs 1-558 above.

560.   ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does are "persons", as that term is used in the text of 42 USC §1983.

561.   Under color of law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does acting individually and in concert, initiated and continued the Plaintiff's criminal prosecution on a charge of tax evasion.

562.   There was no probable cause for the Plaintiff's criminal prosecution.

563.   ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

564.   As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

565.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

566.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### SECOND CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl in their individual and official capacities)

567.    Plaintiff incorporates paragraphs 1-566 above.

568.    DOF Auditors Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl are "persons", as that term is used in the text of 42 USC §1983.

569.    Under color of law, DOF Auditors Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl acting individually and in concert, initiated and continued the Plaintiff's criminal prosecution on a charge of tax evasion.

570.    There was no probable cause for the Plaintiff's criminal prosecution.

571.    DOF Auditors Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

572.    As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

573.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

574.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### THIRD CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Romagnano, Nestel, and various John Doe Police Officers in their individual and official capacities)

575.   Plaintiff incorporates paragraphs 1-574 above.

576.   Romagnano, Nestel, and various John Doe Police Officers are "persons", as that term is used in the text of 42 USC §1983.

577.   Under color of law, Romagnano, Nestel, and various John Doe Police Officers acting individually and in concert, initiated and continued the Plaintiff's criminal prosecution on a charge of tax evasion.

578.   There was no probable cause for the Plaintiff's criminal prosecution.

579.   Romagnano, Nestel, and various John Doe Police Officers actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional right.

580.   As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

581.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

582.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### FOURTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. in their individual and official capacities)

583.   Plaintiff incorporates paragraphs 1-582 above.

584.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. are "persons", as that term is used in the text of 42 USC §1983.

585.   Under color of law, Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. acting individually and in concert, initiated and continued the Plaintiff's criminal prosecution on a charge of tax evasion.

586.   There was no probable cause for the Plaintiff's criminal prosecution.

587.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional right.

588.   As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

589.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

590.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### FIFTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Victory State Bank, VSB, and Christensen in their individual and official capacities)

591.    Plaintiff incorporates paragraphs 1-590 above.

592.    Victory State Bank, VSB, and Christensen are "persons", as that term is used in the text of 42 USC §1983.

593.    Under color of law, Victory State Bank, VSB, and Christensen acting individually and in concert, initiated and continued the Plaintiff's criminal prosecution on a charge of tax evasion.

594.    There was no probable cause for the Plaintiff's criminal prosecution.

595.    Victory State Bank, VSB, and Christensen actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

596.    As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

597.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

598. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SIXTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Brafman, Baker, Brafman & Ross, Brafman and Associates in their individual and official capacities)

599. Plaintiff incorporates paragraphs 1-598 above.

600. Brafman, Baker, Brafman & Ross, Brafman and Associates are "persons", as that term is used in the text of 42 USC §1983.

601. Under color of law, Brafman, Baker, Brafman & Ross, Brafman and Associates acting individually and in concert, continued the Plaintiff's criminal prosecution on a charge of tax evasion.

602. There was no probable cause for the Plaintiff's criminal prosecution.

603. Brafman, Baker, Brafman & Ross, Brafman and Associates actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

604. As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

605. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

606.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### SEVENTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Shulman in his individual capacity)

607.    Plaintiff incorporates paragraphs 1-606 above.

608.    Shulman is a "person", as that term is used in the text of 42 USC §1983.

609.    Under color of law, Shulman acting individually and in concert, continued the Plaintiff's criminal prosecution on a charge of tax evasion.

610.    There was no probable cause for the Plaintiff's criminal prosecution.

611.    Shulman was malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

612.    As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

613.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

614.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## EIGHTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Dire in his individual and official capacity)

615.    Plaintiff incorporates paragraphs 1-614 above.

616.    Dire is a "person", as that term is used in the text of 42 USC §1983.

617.    Under color of law, Dire acting individually and in concert, continued the Plaintiff's criminal prosecution on a charge of tax evasion.

618.    There was no probable cause for the Plaintiff's criminal prosecution.

619.    Dire was malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

620.    As a result of these wrongful prosecutions, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

621.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

622.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## NINTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei,
Paralegal Watts, and various ADA John/Jane Does in their individual
capacities)

623.    Plaintiff incorporates paragraphs 1-622 above.

624.    ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does are "persons", as that term is used in the text of 42 USC §1983.

625.    Under color of law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does acting individually and in concert, concealed evidence of Plaintiff's actual innocence.

626.    ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does conspired to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

627.    ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

628.    ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

629.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

630.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

631.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with

defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TENTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl in their individual and official capacities)

632.    Plaintiff incorporates paragraphs 1-631 above.

633.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl are "persons", as that term is used in the text of 42 USC §1983.

634.    Under color of law, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl acting individually and in concert, concealed evidence of Plaintiff's actual innocence.

635.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl conspired to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

636.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

637.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

638.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

639.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to his reputation.

640.  As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## ELEVENTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Romagnano in her individual and official capacity)

641.  Plaintiff incorporates paragraphs 1-640 above.

642.  Romagnano is a "person", as that term is used in the text of 42 USC §1983.

643.  Under color of law, Romagnano concealed evidence of Plaintiff's actual innocence.

644.  Romagnano conspired with prosecutors and others to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

645.  Romagnano knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

646.  Romagnano evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

647.  As a result of the Defendant's conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

648.  As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

649.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWELFTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. in their individual and official capacities)

650.   Plaintiff incorporates paragraphs 1-649 above.

651.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. are "persons", as that term is used in the text of 42 USC §1983.

652.   Under color of law, Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. acting individually and in concert, concealed evidence of Plaintiff's actual innocence.

653.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. conspired to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

654.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

655.   Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

656.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

657.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

658.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTEENTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Victory State Bank, VSB, and Christensen in their individual and official capacities)

659.    Plaintiff incorporates paragraphs 1-658 above.

660.    Victory State Bank, VSB, and Christensen are "persons", as that term is used in the text of 42 USC §1983.

661.    Under color of law, Victory State Bank, VSB, and Christensen acting individually and in concert, concealed evidence of Plaintiff's actual innocence.

662.    Victory State Bank, VSB, and Christensen conspired to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

663.    Victory State Bank, VSB, and Christensen knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

664.    Victory State Bank, VSB, and Christensen evidenced a reckless and callous disregard for,

and deliberate indifference to, Plaintiff's constitutional rights.

665. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

666. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

667. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## FOURTEENTH CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Dire in his individual and official capacity)

668. Plaintiff incorporates paragraphs 1-667 above.

669. Dire is a "person", as that term is used in the text of 42 USC §1983.

670. Under color of law, Dire concealed evidence of Plaintiff's actual innocence.

671. Dire conspired with prosecutors and others to conceal and obfuscate evidence of Plaintiff's innocence from the Plaintiff, his attorney, and the courts.

672. Dire knowingly and intentionally concealed critical exculpatory evidence to which Plaintiff was entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

673. Dire evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

674.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

675.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

676.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### FIFTEENTH CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
### 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does in their individual capacities)

677.    Plaintiff incorporates paragraphs 1-676 above.

678.    ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does are "persons", as that term is used in the text of 42 USC §1983.

679.    Acting under color of law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure.

680.    Acting under color of law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does, individually and in concert, fabricated false and misleading evidence long *before* presentation to a grand jury, and

during the investigatory stage of the proceeding.

681. Acting under color of law, ADA Frey and Paralegal Watts, individually and in concert, stole the Plaintiff's mail to fabricate false evidence to initiate and instigate the Plaintiff's wrongful seizure.

682. Acting under color of law, ADA Frey produced false and misleading evidence that he understood and agreed would be falsely misrepresented to obtain a search warrant at the Plaintiff's residence and home office on March 19, 2002 and March 20, 2002.

683. Under color of law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does, acting individually and in concert, abused their authority and positions as law enforcement officers to bribe, coerce, intimidate, or otherwise influence witnesses to testify falsely before a grand jury and trial jury.

684. ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, and various ADA John/Jane Does evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

685. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

686. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

687. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SIXTEENTH CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

### (Against Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl in their individual and official capacities)

688.    Plaintiff incorporates paragraphs 1-687 above.

689.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl are "persons", as that term is used in the text of 42 USC §1983.

690.    Acting under color of law, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

691.    Acting under color of law, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl, individually and in concert, conspired to produce the documents that comprise Grand Jury Exhibit 29 that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

692.    Acting under color of law, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl, individually and in concert, conspired to produce fraudulent auditing and accounting reports, summaries and schedules that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

693.    Acting under color of law, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl, individually and in concert, conspired to produce fraudulent auditing and accounting reports, summaries and schedules concerning "depreciation recapture" that they understood and agreed would be falsely misrepresented to constructively amend the Plaintiff's indictment to maintain the Plaintiff's malicious continuing seizure.

694.    Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

695.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

696.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

697.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SEVENTEENTH CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. in their individual and official capacities)

698.    Plaintiff incorporates paragraphs 1-697 above.

699.    Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. are "persons", as that term is used in the text of 42 USC §1983.

700.    Acting under color of law, Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co., individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure.

701.    Steven Orlando, Lori Orlando, and Data Comm, individually and in concert, stole the

154

Plaintiff's mail to manufacture false evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure.

702. Steven Orlando and Lori Orlando, individually and in concert, manufactured the documents that comprise Grand Jury Exhibit 34 that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure.

703. Steven Orlando, Lori Orlando, Data Comm and 1276 Castleton Realty Co. evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

704. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

705. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

706. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

**EIGHTEENTH CAUSE OF ACTION:**
**FABRICATION OF FALSE EVIDENCE IN VIOLATION OF**
**42 USC §1983**

(Against Victory State Bank, VSB, and Christensen in their individual and official capacities)

707. Plaintiff incorporates paragraphs 1-706 above.

708. Victory State Bank, VSB, and Christensen are "persons", as that term is used in the text

of 42 USC §1983.

709.   Acting under color of law, Victory State Bank, VSB, and Christensen, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

710.   Acting under color of law, Christensen testified falsely before the Grand Jury concerning the Plaintiff's and his brother's bank accounts at Victory State Bank to produce false and misleading evidence that he understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution

711.   Victory State Bank, VSB, and Christensen evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

712.   As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

713.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

714.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## NINETEENTH CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

(Against Dire in his individual and official capacity)

715.    Plaintiff incorporates paragraphs 1-714 above.

716.    Dire is a "person", as that term is used in the text of 42 USC §1983.

717.    Acting under color of law, Dire produced false and misleading evidence that he understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

718.    Acting under color of law, Dire testified falsely before the trial jury concerning three real estate deeds to produce false and misleading evidence that he understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

719.    Dire evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

720.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

721.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

722.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

**TWENTIETH CAUSE OF ACTION:**
**FABRICATION OF FALSE EVIDENCE IN VIOLATION OF**
**42 USC §1983**

(Against Romagnano in her individual and official capacity)

723.    Plaintiff incorporates paragraphs 1-722 above.

724.    Romagnano is a "person", as that term is used in the text of 42 USC §1983.

725.    Acting under color of law, Romagnano produced false and misleading evidence that she understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

726.    Acting under color of law, Romagnano testified falsely before the grand jury concerning a warrantless search and seizure to produce false and misleading evidence that she understood and agreed would be falsely misrepresented to obtain the Plaintiff's wrongful seizure and malicious prosecution.

727.    Acting under color of law, Romagnano produced false and misleading evidence that she understood and agreed would be falsely misrepresented to obtain a search warrant at the Plaintiff's residence and home office on March 19, 2002 and March 20, 2002.

728.    Romagnano evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

729.    As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

730.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

731.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-FIRST CAUSE OF ACTION:
## CONSPIRACY IN VIOLATION OF 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei,
Paralegal Watts, and various ADA John/Jane Does in their individual
capacities; Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, and Stahl in
their individual and official capacities; Romagnano, and Nestel, in their
individual and official capacities; Steven Orlando, Lori Orlando, Data
Comm and 1276 Castleton Realty Co. in their individual and official
capacities; Victory State Bank, VSB, and Christensen in their individual
and official capacities; and Dire in his individual and official capacity. )

732.   Plaintiff incorporates paragraphs 1-731 above.

733.   ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA
       John/Jane Does,  Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, Stahl,  Romagnano,
       Nestel, Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co., Victory
       State Bank, VSB, Christensen, and Dire are "persons", as that term is used in the text of
       42 USC §1983.

734.   Under color of state law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei,
       Paralegal Watts, various ADA John/Jane Does, Kokeas, Schenk, Tassiello, Arena,
       Moses, Cutaia, Stahl,  Romagnano, Nestel, Steven Orlando, Lori Orlando, Data Comm,
       1276 Castleton Realty Co., Victory State Bank, VSB, Christensen, and Dire conspired
       and entered into express and or implied agreements, understandings, or meeting of the
       minds among themselves to deprive Plaintiff of his constitutional rights by charging and
       prosecuting the Plaintiff for tax evasion, which these Defendants knew were not
       supported by probable cause.

735.   ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA
       John/Jane Does, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, Stahl,  Romagnano,
       Nestel, Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co., Victory

State Bank, VSB, Christensen, and Dire willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

a) stealing, delaying and destroying the Plaintiffs mail;

b) fabricating false evidence;

c) stealing the Plaintiff's money and property;

d) to bribe, coerce, deceive, provoke, threaten, or otherwise influence the Plaintiff's defense lawyers;

e) publishing false and inflammatory public statements regarding Plaintiff;

f) concealing exculpatory evidence;

g) destroying exculpatory evidence;

h) fabricating additional false evidence concerning a fraudulent "depreciation recapture" tax theory to constructively amend the Plaintiff's indictment;

i) concealing a warrantless search and seizure (break-in) at 496 Willowbrook Road in Staten Island;

j) to conduct illegal search and seizure at 496 Willowbrook Road on February 25, 2002, March 19, 2002 and March 20, 2002.

k) concealing an expired search warrant dated February 25, 2002 at 496 Willowbrook Road in Staten Island;

l) hiding a search warrant application dated February 25, 2002;

m) tampering with a search warrant application dated March 15, 2002;

n) making materially false and misleading statements to a grand jury;

o) agreeing to make false and materially incomplete statements to a grand jury;

p) making materially false or misleading statements to the Supreme Court;

q) to kill the Plaintiff and or other family members; and

r) protecting DA Donovan's Continuing Criminal Enterprise from detection or its members from apprehension.

736.   ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA John/Jane Does, Kokeas, Schenk, Tassiello, Arena, Moses, Cutaia, Stahl, Romagnano, Nestel, Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co., Victory State Bank, VSB, Christensen, and Dire evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

737.   As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

738.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

739.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### TWENTY-SECOND CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei,
Paralegal Watts, and various ADA John/Jane Does in their individual
capacities; Brafman, Baker, Brafman & Ross, Brafman and Associates in
their individual and official capacities; and Shulman in his individual and
official capacity.)

740. Plaintiff incorporates paragraphs 1-739 above.

741. ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA John/Jane Does, Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman are "persons", as that term is used in the text of 42 USC §1983.

742. Under color of state law, ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA John/Jane Does, Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman conspired and entered into express and or implied agreements, understandings, or meeting of the minds among themselves to deprive Plaintiff of his constitutional rights by charging and prosecuting the Plaintiff for tax evasion, which these Defendants knew were not supported by probable cause.

743. ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA John/Jane Does, Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

   a) stripping the Plaintiff of effective assistance of counsel;

   b) breaching the Plaintiff's attorney-client privilege;

   c) stealing the Plaintiff's money and property;

   d) maliciously continuing the Plaintiff's seizure;

   e) coercing the Plaintiff to plead guilty knowing me to be innocent;

   f) conspiring to violate the Plaintiff's access to courts;

   g) creating alibis for Supreme Court Judges;

   h) aiding and abetting prosecutors' criminal activity;

   i) concealing prosecutors' criminal activity;

162

j) concealing a warrantless search and seizure (break-in) at 496 Willowbrook Road in Staten Island;

k) concealing an expired search warrant dated February 25, 2002 at 496 Willowbrook Road in Staten Island;

l) hiding a search warrant application dated February 25, 2002;

m) concealing exculpatory evidence; and

n) protecting DA Donovan's Continuing Criminal Enterprise from detection or its members from apprehension.

744. ADA Frey, ADA Varriale, ADA Bousquet, ADA Mattei, Paralegal Watts, various ADA John/Jane Does, Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

745. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

746. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

747. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

**TWENTY-THIRD CAUSE OF ACTION:**
**ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF**
**42 USC §1983**

(Against ADA Frey, Paralegal Watts, various ADA John/Jane Does in their individual capacities; Romagnano, various John Doe Police Officers in their individual and official capacities; Steven Orlando, Lori Orlando, and Data Comm in their individual and official capacities.)

748.   Plaintiff incorporates paragraphs 1-747 above.

749.   ADA Frey, Paralegal Watts, various ADA John/Jane Does, Romagnano, various John Doe Police Officers, Steven Orlando, Lori Orlando, and Data Comm are "persons", as that term is used in the text of 42 USC §1983.

750.   Acting under color of law, Romagnano, various John Doe Police Officers, and various ADA John/Jane Does conducted an illegal search and seizure at 496 Willowbrook Road in Staten Island, on March 19, 2002.

751.   Acting under color of law, Romagnano, various John Doe Police Officers, and various ADA John/Jane Does conducted an illegal search and seizure at 496 Willowbrook Road in Staten Island, on March 20, 2002.

752.   Acting under color of law, ADA Frey, Paralegal Watts, Steven Orlando, Lori Orlando, and Data Comm conducted illegal searches and seizures of the Plaintiff's United States Mail without the Plaintiff's knowledge or consent.

753.   Acting under color of law, ADA Frey initiated an illegal search and seizure of the Plaintiff's residence and home office at 496 Willowbrook Road in Staten Island by preparing a search warrant application dated March 15, 2002 that contained more than two hundred false statements and materials omissions. ADA Frey prepared the fraudulent search warrant application during the investigatory stage of the proceedings and knew that the facts recited in the affidavit were false and did not constitute probable cause.

754.   Acting under color of law, Romagnano initiated an illegal search and seizure of the

164

Plaintiff's residence and home office at 496 Willowbrook Road in Staten Island by preparing a search warrant application dated March 15, 2002 that contained more than two hundred false statements and materials omissions. Romagnano prepared the fraudulent search warrant application during the investigatory stage of the proceedings and knew that the facts recited in the affidavit were false and did not constitute probable cause.

755. The Tax Indictment, No. 23/2004, is based entirely upon evidence and leads obtained from the foregoing illegal searches and seizures.

756. The foregoing illegal searches and seizures were obtained without probable or reasonable cause.

757. ADA Frey, Paralegal Watts, various ADA John/Jane Does, Romagnano, various John Doe Police Officers, Steven Orlando, Lori Orlando, and Data Comm evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

758. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

759. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

760. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### TWENTY-FOURTH CAUSE OF ACTION:
### VIOLATION OF 42 USC §1983

(MONELL V. DEP'T OF SOCIAL SERVS., 436 U.S. 658 (1977))

(Against The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, Fiala in their official capacities.)

A. Officials with Final Policymaking Authority for The City Approved the Unconstitutional Conduct of Their Subordinates.)

761. Plaintiff incorporates paragraphs 1-760 above.

762. The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala had contemporaneous knowledge through the chain of command that the named Defendants in their respective commands violated constitutional standards, fabricated false evidence, concealed exculpatory evidence, unlawfully seized, maliciously prosecuted, conspired and acted in concert to violate the Plaintiff's constitutional rights.

763. Plaintiff sent Policymaker DA Donovan at least thirty five (35) letters informing him of the foregoing constitutions deprivations and violations who ignored the notifications with deliberate indifference for the Plaintiff's constitutional rights.

764. Policymaker DA Donovan failed to act or respond to the Plaintiff's letters and repeated complaints of civil rights violations evidencing deliberate indifference for the Plaintiff's constitutional rights. DA Donovan turned a blind eye to his officer's habitual criminal and unconstitutional acts and omissions.

765. Policymaker DA Donovan agreed to, approved, ratified, and encouraged his subordinates unconstitutional acts and omissions.

766. Upon information and belief, Policymakers Ray Kelly, Stark, Frankel, Thompson, and Fiala agreed to, approved and ratified the unconstitutional conduct of their subordinates.

767. It would have been plainly obvious to a reasonable policymaker that such conduct would

lead to deprivations of Plaintiff's constitutional rights.

768.    As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

B.  DA Donovan Established an Unconstitutional Policy and Custom

769.    In a letter dated July 5, 2005, DA Donovan informed the Plaintiff of his personal policy and custom not to intervene or otherwise discuss any aspect of an ongoing criminal case with defense counsel regardless of the unconstitutional acts or omissions of his assistants or law enforcement personnel.

770.    DA Donovan knew – with reasonable certainty – that significant violations of innocent citizens' constitutional rights would occur.

771.    The City, by and through its policymaker DA Donovan, evinced deliberate indifference for the Plaintiff's constitutional rights.

772.    The City's unconstitutional policies and customs were (a) deliberately or recklessly indifferent to the Plaintiff's constitutional rights; and to the issue of whether innocent people were being convicted of crimes.

773.    The City's municipal liability here is premised upon, among other things, their failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

774.    As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution.

C.  Stark and Frankel Established an Unconstitutional Policy and Custom

775.  In a recorded conversation on January 24, 2007, Schenk claimed that the DOF Commissioner promulgated a "policy" whereby he and his auditors were trained and instructed not to consider any evidence older than "usually three years", whether or not the evidence is exculpatory or vindicates the accused.  When asked whether his 3 year look back period was a law or policy, Schenk responded, "No. It's the policy that's promulgated by the Commissioner." [Tr. 1/24/07 at 37.]

776.  Therefore, based upon this and other evidence, The City, by and through its Policymakers DOF Commissioner Martha Stark and David Frankel, adopted an unconstitutional policy and custom, and knew with reasonably certainty would result in violation of the Plaintiff's constitutional rights.

777.  The City's unconstitutional customs, decisions, policies and or indifferent employee training or supervision were (a) deliberately or recklessly indifferent to a criminal defendant's constitutional rights; and (b) deliberately or recklessly indifferent to the issue of whether innocent people were being convicted of crimes.

778.  The City's municipal liability here is premised upon, among other things, their failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

779.  As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution.

###  D. DA Donovan, DA Murphy, and Thompson Established an Unconstitutional Policy and Custom

780.  The City, by and through its policymakers DA Murphy, DA Donovan and Thompson

have established an unconstitutional policy and custom whereby prosecutors are paid "one time payments" based on "performance evaluations," i.e. convictions.

781.    DA Murphy and DA Donovan have implemented a policy and custom that encourages prosecutors to falsely accuse, falsely arrest, falsely imprison, and maliciously prosecute innocent United States Citizens for profit and career advancement.

782.    DA Murphy and DA Donovan's policy and custom financially rewards prosecutors who are predators.

783.    Moreover, Policymaker Thompson performed an audit of the Richmond County District Attorney's Office and prepared a written report dated January 7, 2005 entitled, "Audit Report on the Financial and Operating Practices of the Richmond County District Attorney's Office," which I incorporate by reference and make a part hereof.

784.    The January 7, 2005 report reveals that prosecutors' were paid approximately one half million dollars of "One-Time Payments Without Supporting Justification" in the fiscal year July 1, 2002 through June 30, 2003.

785.    Thompson also uncovered "Special Expenditure" accounts that held several hundred thousand dollars of unidentified cash. DA Donovan precluded Thompson from investigating the sources and uses of the cash.

786.    Instead, Policymaker Thompson allowed DA Donovan and his office to be self-policing, and watched the accounts balloon to several million dollars according to recent newspaper articles in December of 2009.

787.    DA Murphy and DA Donovan's unconstitutional policy and custom encourages prosecutors to file frivolous civil forfeiture proceedings that generate unlimited cash that prosecutors need not, according to Thompson, account for.

788.    As a result of the foregoing, DA Murphy and DA Donovan's unconstitutional policy and customs approved and ratified the unconstitutional acts and omissions of their ADAs and knew with reasonably certainty would result in violation of the Plaintiff's constitutional rights.

789.    The City's unconstitutional customs, decisions, policies and or indifferent employee training or supervision were (a) deliberately or recklessly indifferent to a criminal defendant's constitutional rights; and (b) deliberately or recklessly indifferent to the issue of whether innocent people were being convicted of crimes.

790.    The City's municipal liability here is premised upon, among other things, their failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

791.    As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution.

### E.    Policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala Failed to Adequately Train and Supervise their Subordinates.

792.    The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala were grossly negligent in managing and supervising their subordinates who caused and procured the Plaintiff's unlawful seizure and malicious prosecution without reasonable or probable cause.

793.    The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala failed to adequately train or supervise their subordinates relating to:

    a)  their obligation to refrain from fabricating evidence;

    b)  their obligation to avoid the use of fabricated evidence;

    c)  their obligation to disclose Brady material;

    d)  their obligation to avoid the use of perjured testimony;

    e)  their obligation to refrain from suborning perjury;

    f)  their obligation to disclose exculpatory evidence;

    g)  their obligation to disclose Rosario material;

    h)  their obligation to refrain from constructively amending indictments;

    i)  their obligation to avoid framing innocent US citizens;

    j)  their obligation to avoid accepting bribes or other form of compensation in return for convicting innocent US citizens;

794.   The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala knew to a moral certainty that their subordinates would confront the particular situations described in (a) through (j) above.

795.   The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala knew the situations described in (a) through (j) above presents the subordinates with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation.

796.   The City, by and through its policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala knew that the wrong choice by the subordinates frequently causes constitutional deprivations.

797.   As a direct and foreseeable consequence of the Policymakers DA Donovan, Ray Kelly, Stark, Frankel, Thompson, and Fiala's failure to train or supervise their subordinates,

Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution.

## TWENTY-FIFTH CAUSE OF ACTION:
## STATE CLAIMS

798.    Plaintiff incorporates paragraphs 1-797 above.

799.    I hereby respectfully place the named Defendants on notice of the following state claims that will be set forth in detail and with specificity in the Plaintiff's amended complaint based upon the foregoing facts, and documents that are incorporated by reference: Malicious prosecution and conspiracy, false arrest, obstruction of justice and conspiracy, reckless or negligent failure to properly hire, train, and supervise the City employees, and negligence.

## ACKNOWLEDGMENT

800.    It is nothing short of a miracle that I am alive today. Few people will ever find themselves entangled in a situation so grave that without Divine intervention their life, livelihood, and family would be completely destroyed. In this case, I can say beyond a shadow of doubt it is God alone whose intervention saved my life.

801.    For this reason, I bow my knees to the Father of my Lord Jesus Christ in gratefulness for His strength, protection and guidance throughout this process. I would also like to thank the Holy Spirit for continually uncovering the truth in this case, because of His faithfulness I have been delivered from the hands of an enemy who not only plotted to steal all of my earthly possessions, to harm and make homeless my 6-year old daughter Sofia Christina, but also to take my life.

## PRAYER FOR RELIEF

802.    WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1-801 above,

a)  Damages in an amount to be established at trial as compensation for constitutional deprivations; past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation; loss of education; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct;

b)  Damages in the amount to be established at trial to punish Defendants for outrageous conduct, pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiff's constitutional rights, to discourage them from engaging similar conduct in the future, and to deter others similarly situated in engaging in similar conduct;

c)  An award of attorneys' fees, including attorneys' fees pursuant to 42 USC §1988(b);

d)  An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

e)  A permanent injunction prohibiting Defendant The City and the Richmond County District Attorney's Office (DA Donovan), and their agents, servants nd representatives, from destroying any evidence relating to Plaintiff Robert Fileccia and Richmond County Indictment Nos. 62/2002 and 23/2004; and

f)  Whatever additional relief the Court may deem proper.

173

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.


Dated: February 4, 2010                    Respectfully submitted,



                                           Robert J. Fileccia, Esq. (RF 5166)
                                           *Pro Se* Plaintiff
                                           496 Willowbrook Road
                                           Staten Island, N.Y. 10314
                                           Tel. (718) 982-1573
                                           Email: catchaprosecutor@aol.com